**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORSE STRAITS LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SHM CABRILLO ISLE LLC d/b/a SAFE HARBOR MARINAS LLC; DEBBIE J. DAVIS; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:25-cv-03259-H-BJW<br><br>**ORDER:**<br>**(1) DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND**<br>**(2) DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>[Doc. No. 3; Doc. No. 4] |

On September 16, 2025, Plaintiff Norse Straits LLC filed a civil action against Defendant SHM Cabrillo Isle LLC and Defendant Debbie J. Davis in the Superior Court of California, County of San Diego. (Doc. No. 1, Notice of Removal.) On November 21, 2025, Defendants removed the action to this Court. (Doc. No. 1, Notice of Removal.) On November 26, 2025, Defendants filed a motion to dismiss and a motion to strike portions of the Complaint. (Doc. No. 3; Doc. No. 4.) On February 10, 2026, Plaintiff filed its oppositions to Defendants' motion to dismiss and motion to strike. (Doc. No. 7; Doc. No. 8.) On February 13, 2026, Defendants filed their replies. (Doc. No. 9; Doc. No. 10.) On February 19, 2026, the Court took Defendants' motions under submission. (Doc. No. 11.) For the reasons set forth below, the Court **DENIES IN PART** Defendants' motion to dismiss and **DENIES** Defendants' motion to strike.

## Background

On September 16, 2025, Plaintiff filed a civil action against Defendants in the Superior Court of California, County of San Diego. (Doc. No. 1, Notice of Removal.) Plaintiff brings 10 causes of action against Defendants: breach of contract, tortious interference with prospective economic advantage, conversion, fraud, unfair business practices (Cal. Bus. & Prof. Code § 17200), wrongful eviction, negligence/bad faith, declaratory relief, and trespass to chattels. (Doc. No. 1, Compl., ¶¶ 20–75.) Plaintiff seeks damages for its losses, punitive damages against Defendant Davis, restitution, and declaratory and injunctive relief regarding Defendants' purported authority over off-site vessel use. (Doc. No. 1, Compl.) On November 21, 2025, Defendants removed the action to United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1332 on diversity jurisdiction. (Doc. No. 1, Notice of Removal, ¶ 4.) By the present motions, Defendants seek to dismiss and strike portions of the complaint. (Doc. No. 3; Doc. No. 4.)

The following background is taken from the allegations in Plaintiff Norse Straits LLC's ("Norse Straits") state court complaint. Plaintiff is a Colorado limited liability company with its principal place of business in San Diego County. (Doc. No. 1, Compl., ¶ 2.) Defendant SHM Cabrillo Isle LLC ("SHM") is a Delaware limited liability company operating in San Diego as Safe Harbor Marina ("Safe Harbor"). (Doc. No. 1, Compl., ¶ 3.) Defendant Debbie J. Davis ("Davis") is an individual residing in California who serves as General Manager of Safe Harbor. (Doc. No. 1, Compl., ¶ 4.) SoCal Boatworks, Inc. ("SoCal") is a California corporation that provides boat services. (Doc. No. 1, Compl., ¶ 9.) Plaintiff claims that Norse Straits and SoCal are distinct business organizations, despite sharing representatives such as Eric McNeil. (Doc. No. 1, Compl., ¶ 9.) Plaintiff also claims that Defendant Davis improperly conflated the two entities in her communications. (Doc. No. 1, Compl., ¶ 9.)

Plaintiff owns the vessel "Bad to the Bone" in slip H-32 at Safe Harbor and holds a month-to-month slip agreement transferred from the vessel's prior owner in July 2023.

(Doc. No. 1, Compl., ¶ 8.)  On July 11, 2023, Defendant Davis requested a Certificate of Insurance for the slip from Eric McNeil and Kelly Cathcart, demanding that Safe Harbor be listed as an additional insured with a $500,000 liability.  (Doc. No. 1, Compl., ¶ 10.) Defendant Davis sent emails following up on this request on July 13, 18, 19, 24, 26, 27, and 28.  (Doc. No. 1, Compl., ¶ 10.)  Defendant Davis's emails escalated to threatening to remove "Bad to the Bone" if no insurance policy was procured by July 28, 2023.  (Doc. No. 1, Compl., ¶ 10.)  These threats continued despite Cathcart's responses indicating efforts to comply via Cox Yacht Insurance and the transfer of vessel ownership not becoming effective until August 1, 2023.  (Doc. No. 1, Compl., ¶ 10.)

On July 27, 2023, Defendant Davis accused Plaintiff of excessive overnight stays, citing key fob data.  (Doc. No. 1, Compl., ¶ 11.)  Plaintiff disputed this allegation, claiming it was untrue and unsupported by evidence.  (Doc. No. 1, Compl., ¶ 11.)  Defendant Davis expressed regret for allowing Plaintiff's vessel and warned of a waitlist.  (Doc. No. 1, Compl., ¶ 11.)

On May 27, 2024, Cathcart requested permission for off-site chartering.  (Doc. No. 1, Compl., ¶ 12.)  Cathcart offered to share schedules with Defendant Davis and clarified that Plaintiff had no intention of chartering from the slip.  (Doc. No. 1, Compl., ¶ 12.) Defendant Davis had expressed in a pre-purchase meeting that off-site chartering was allowed before later imposing a blanket ban.  (Doc. No. 1, Compl., ¶ 11.)  On May 28, 2024, Defendant Davis denied Cathcart's request by email, citing capacity limits and a prior notice to McNeil that no charter activity was allowed.  (Doc. No. 1, Compl., ¶ 12.) Defendant Davis suggested H&M Landing as an alternative, but prohibited any activity in the Safe Harbor marina.  (Doc. No. 1, Compl., ¶ 12.)  In an email dated August 28, 2024, Frank Ursitti of H&M Landing confirmed that Plaintiff could charter at H&M Landing, to which Defendant Davis replied with a threat to terminate the slip agreement for any commercial activity on Safe Harbor property.  (Doc. No. 1, Compl., ¶ 12.)  Defendant Davis proceeded to prohibit all chartering activities by Plaintiff, including those at off-site locations such as H&M Landing.  (Doc. No. 1, Compl., ¶ 13.)  Defendant Davis threatened

3:25-cv-03259-H-BJW

immediate slip termination for any associated actions, including loading supplies or parking.  (Doc. No. 1, Compl., ¶ 13.)

After denying Plaintiff's request for a charter pass, Defendant Davis granted passes to other boats, including a whale-watching boat.  (Doc. No. 1, Compl., ¶ 11.)  Defendant Davis also denied Plaintiff's request to swap slips for advertising purposes, further restricting Plaintiff's business operations.  (Doc. No. 1, Compl., ¶ 11.)  Plaintiff alleges that this disparate treatment was motivated by a "dislike of Cathcart's wealth and use of a 'black card' credit card for payments."  (Doc. No. 1, Compl., ¶ 13.)

On April 9, 2025, Defendant Davis notified Cathcart that her auto-payment for April had failed.  (Doc. No. 1, Compl., ¶ 14.)  On May 20, 2025, Defendant Davis issued a 30-day notice to remove "Bad to the Bone" by June 20, 2025.  (Doc. No. 1, Compl., ¶ 14.)  The PDF notice was copied to SoCal.  (Doc. No. 1, Compl., ¶ 14.)  Cathcart paid the outstanding balance on May 23, 2025.  (Doc. No. 1, Compl., ¶ 14.)  On June 11, 2025, Defendant Davis reminded Plaintiff of the deadline to remove "Bad to the Bone" and refunded Plaintiff's $3,535 deposit.  (Doc. No. 1, Compl., ¶ 14.)  On June 25, 2025, Defendant Davis emailed Plaintiff that the deadline was extended to July 15, 2025 at $113.06 per day and that the slip was reassigned.  (Doc. No. 1, Compl., ¶ 14.)  After July 15, 2025 had passed, Defendant Davis barred Plaintiff from access and declared the vessel abandoned.  (Doc. No. 1, Compl., ¶ 14.)  Defendants then imposed various daily fees on Plaintiff between July 16 and August 1, totaling $4,732.  (Doc. No. 1, Compl., ¶ 14.)  On July 18, 2025, Defendants issued a notice enforcing a lien for abandonment.  (Doc. No. 1, Compl., ¶ 14.)

Defendant Davis also revoked SoCal's vendor contracts and refused to reinstate them until Plaintiff's vessel was removed, purportedly conflating Plaintiff Norse Straits and SoCal.  (Doc. No. 1, Compl., ¶ 15.)  Plaintiff alleges that Defendant Davis punished Plaintiff for SoCal's unrelated activities by imposing chartering restrictions on Plaintiff.  (Doc. No. 1, Compl., ¶ 15.)  Plaintiff also alleges that Defendant Davis publicly accused Norse Straits representatives of theft and locked them in an office in August 2023.  (Doc.

No. 1, Compl., ¶ 16.)

Plaintiff alleges that it suffered over $300,000 worth of damages in lost chartering revenue. (Doc. No. 1, Compl., ¶ 17.) Plaintiff alleges that Defendants' lockout damaged the vessel due to lack of maintenance, which will cost Plaintiff over $50,000 in repairs. (Doc. No. 1, Compl., ¶ 17.) Plaintiff also alleges storage and lien fees, inability to sell the vessel, and other financial losses, totaling over $500,000. (Doc. No. 1, Compl., ¶ 17.) Plaintiff claims Defendant Davis's actions were motivated by personal animus, evidenced by former employee statements and inconsistent treatment. (Doc. No. 1, Compl., ¶ 18.) Plaintiff also states that it cannot produce a copy of the slip agreement Defendant violated because it is stored aboard the vessel, access to which has been denied by Defendants' lockout. (Doc. No. 1, Compl., ¶ 19.)

## Discussion

### I.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept the factual

3:25-cv-03259-H-BJW

allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See De Soto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

## II.    Analysis

Defendants' motion to dismiss and motion to strike raise numerous issues. (Doc. No. 3; Doc. No. 4.) The Court addresses the parties' arguments on each issue in turn.

### A. Capacity to Sue

Defendants argue in their initial motion to dismiss that Plaintiff did not have the capacity to sue because an LLC must be in good standing to prosecute or defend a lawsuit and a foreign LLC cannot maintain an action in California courts until it registers with the Secretary of State. (Doc. No. 3.) Plaintiff responds in its opposition that Defendants' argument is now moot because Plaintiff cured both issues and those cures apply retroactively. (Doc. No. 7.) Defendants maintain that litigants cannot cure capacity defects

after a lawsuit has commenced because capacity is determined at the time of filing. (Doc. No. 9.)

Defendants' principal objection to Plaintiff's curing its incapacity is that Fed. R. Civ. P. 17(b)'s capacity requirement functions similarly to jurisdiction. More specifically, Defendants argue that capacity, like Article III standing, must be determined at the time of filing. But Defendants' attempts to draw parallels between Rule 17(b)'s capacity requirement and jurisdiction are unconvincing. For one, the Supreme Court treats the two concepts very differently, consistently holding that lack of jurisdiction is a nonwaivable defect but incapacity to sue is an issue that can be waived like an affirmative defense. Compare Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 573–74 (2004) (noting that the jurisdictional defect was cured by dismissing the diversity-destroying party), with Conard v. Atlantic Ins. Co. of NY, 26 U.S. 386, 450 (1828) (holding that claims regarding capacity are waived if not raised), and Van Dusen v. Barrack, 376 U.S. 612, 624–25 (1964) (analyzing capacity as a procedural matter governed by state law rather than as a federal jurisdiction prerequisite). Capacity and jurisdiction are distinct concepts that warrant different treatment. See Southern California Darts Ass'n v. Zaffina, 762 F.3d 921, 926–27 (9th Cir. 2014) (analyzing jurisdiction separately from capacity to sue); see also Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir. 1992) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue with the real party in interest principle.").

Capacity encompasses both the power to bring and maintain an action, and "should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest." Revitalizing Auto Communities Environment Response Trust v. National Grid USA, 10 F.4th 87, 97 (2d Cir. 2021) (quoting Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1559 (3d ed. 2017)). Because capacity bears on a litigant's ability to maintain an action in court, it follows that capacity is an ongoing status determination rather than a gateway issue. No case law or excerpt from Rule 17(b) demands that capacity to sue be determined at the time of filing similar to the jurisdictional analysis. The Court

3:25-cv-03259-H-BJW

therefore denies Defendants' argument on capacity.

### B. Joinder of Defendant Davis

Defendants claim that Defendant Davis is improperly joined because respondeat superior dictates that SHM be liable for Defendant Davis's actions in the scope of employment. (Doc. No. 3.)  Defendants argue that Defendant Davis acted "at all relevant times as SHM's employee and that every challenged communication occurred in her role as SHM's General Manager." (Doc. No. 3.)  Plaintiff responds that Defendant Davis's tortious conduct exceeded the scope of her job and involved personal animus. (Doc. No. 7.)  Specifically, Plaintiff points to Defendant Davis's theft accusation and lockout as indicative of personal hostility, "not mere policy enforcement." (Doc. No. 7.)

Respondeat superior is a state common law doctrine that allows employers to be held vicariously liable for torts committed by its employees within the scope of employment. Mary M. v. City of Los Angeles, 54 Cal.3d 202, 208 (1991).  As the California Supreme Court has recognized, respondeat superior is a "rule of policy, a deliberate allocation of a risk" based on a "'deeply rooted sentiment' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." Id. (quoting Hinman v. Westinghouse Elec. Co., 2 Cal.3d 956, 959 (1970); Rodgers v. Kemper Constr. Co., 50 Cal.App.3d 608, 618 (1975)).  The California Supreme Court summarized the doctrine as achieving three main objectives: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." Id. (citing Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 967 (1986)).

California courts recognize that an employer and an employee can be sued separately in different actions or together joined as codefendants. Lathrop v. HealthCare Partners Medical Group, 114 Cal.App.4th 1412, 1423 (2004) (citing Perez v. City of Huntington Park, 7 Cal.App.4th 817, 819–20 (1992); see Freeman v. Churchill, 30 Cal.2d 453, 461 (1947); Gardner v. Marshall, 24 Cal.2d 686, 692 (1944)).  As a result, the Court denies the

3:25-cv-03259-H-BJW

motion to dismiss Defendant Davis without prejudice.

### C. Breach of Contract Claim

Defendants argue that Plaintiff cannot bring a breach of contract claim without incorporating the contract by reference or including verbatim terms and provisions in the body of the complaint. (Doc. No. 3.) Plaintiff responds that verbatim terms are not required and that Plaintiff's complaint detailed the agreement's terms, oral or implied terms, alleged breaches, and factual context. (Doc. No. 7.) Plaintiff also maintains that Fed. R. Civ. P. 8 demands only notice, not exhibits, particularly "where the slip agreement is inaccessible due to Defendants' own wrongful lockout." (Doc. No. 7.) Plaintiff further argues that federal rules excuse attachment where impracticable, citing to Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). (Doc. No. 7.) Defendants insist in its reply that the Defendants' lockout does not excuse Plaintiff's failure to attach the agreement. (Doc. No. 9.)

Plaintiff is not required to attach the agreement or include verbatim terms and provisions in the body of the complaint. Plaintiff's complaint need only satisfy the minimal notice pleading requirement of Rule 8(a)(2), a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). To properly state a cause of action for breach of contract under California law, Plaintiff must allege: (1) existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; (3) Defendants' breach; and (4) damages to Plaintiff as a result of the breach. CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008); First Commercial Mortgage Co. v. Reece, 89 Cal.App.4th 731, 745 (2001).

Plaintiff alleges the existence of a contract. (Doc. No. 1, Compl., ¶ 8.) Plaintiff also alleges that it "complied with agreement terms, including payments and insurance requirements." (Doc. No. 1, Compl., ¶ 8.) Plaintiff claims that Defendants breached the slip agreement by restricting Plaintiff's occupancy and access and issuing a notice to vacate the marina. (Doc. No. 1, Compl., ¶¶ 11–15; 24.) Plaintiff claims that Defendants breached the agreement by extending the agreement's prohibitions beyond the marina by denying

off-site chartering services.  (Doc. No. 1, Compl., ¶¶ 11–13; 24.)  Plaintiff also alleges that it suffered damages as a result of Defendants' breach.  (Doc. No. 1, Compl., ¶¶ 17–19; 25.) Though Plaintiff could have included more detail regarding Plaintiff's performance and Defendants' breach, the Court concludes that Plaintiff's allegations are sufficient under Rule 8(a)'s notice pleading standard.  As a result, the Court denies Defendants' motion to dismiss the breach of contract claim.

### D. Tortious Interference with Prospective Economic Advantage Claim

The parties dispute whether Plaintiff adequately pleads the essential elements of tortious interference with prospective economic advantage.  (Doc. No. 3; Doc. No. 7.) California law requires five elements be alleged for intentional interference with prospective economic advantage: (1) [a]n economic relationship between Plaintiff and some third party, with the probability of future economic benefit to Plaintiff; (2) Defendants' knowledge of the relationship; (3) intentional acts on the part of Defendants designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Plaintiff proximately caused by the acts of Defendants. Youst v. Longo, 43 Cal.3d 64, 71 n.6 (1987).

Plaintiff adequately pleads tortious interference with prospective economic advantage.  Plaintiff alleges economic relationships and the probability of future economic benefit with military contractors, H&M Landing, regular chartering services, and potential buyers.  (Doc. No. 1, Compl., ¶¶ 11–13; 27.)  Plaintiff alleges that Defendants were made aware of these economic relationships in several email disputes.  (Doc. No. 1, Compl., ¶¶ 12; 28.)  Plaintiff also alleges that Defendants engaged in intentional wrongful conduct to disrupt the relationship, which took the form of wrongfully denying off-site chartering, evicting the vessel, and imposing an abandonment lien.  (Doc. No. 1, Compl., ¶¶ 11–14; 29.)  Plaintiff further alleges economic harm as a result of Defendants' conduct exceeding $500,000.  (Doc. No. 1, Compl., ¶¶ 17–19; 33.)  These arguments are better suited for a motion for summary judgment when the record is more fully developed.  The Court denies Defendants' motion to dismiss the tortious interference with prospective economic

3:25-cv-03259-H-BJW

advantage claim.

### E. Conversion and Trespass to Chattels Claims

The parties dispute whether Plaintiff adequately pleads the essential elements of conversion.  (Doc. No. 3; Doc. No. 7.)  California law requires Plaintiff allege three elements to state a claim for conversion: (1) Plaintiff's ownership or right to possession of personal property; (2) Defendants' disposition of property in a manner inconsistent with Plaintiff's property rights; and (3) resulting damages.  Voris v. Lampert, 7 Cal.5th 1141, 1150 (2019).  Plaintiff has adequately pled conversion.  Plaintiff alleges ownership or right to possession over the vessel "Bad to the Bone" and access to slip H-32 per the slip agreement. (Doc. No. 1, Compl., ¶¶ 8; 36.)  Plaintiff also alleges that Defendants interfered with Plaintiff's alleged property rights by locking Plaintiff out of the vessel and slip, refusing to return possession, and imposing a lien for abandonment.  (Doc. No. 1, Compl., ¶¶ 14; 37.)  Plaintiff alleges that this interference caused damages.  (Doc. No. 1, Compl., ¶¶ 17–19; 39.)

The parties also dispute whether Plaintiff adequately pleads a claim for trespass to chattels. (Doc. No. 3; Doc. No. 7.)  Trespass to chattels allows recovery where Defendants interfered with Plaintiff's possession of personal property proximately causing actual injury to the chattel or Plaintiff's possessory rights.  Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1350–51 (2003) (citing Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1566 (1996)).  Plaintiff has adequately pled trespass to chattels.  Plaintiff adequately alleges ownership and right of possession to "Bad to the Bone," Defendants' interference with Plaintiff's possession of the vessel, and actual injury stemming from that interference.  (Doc. No. 1, Compl., ¶¶ 8–19; 71–75.)  The Court therefore denies Defendants' motion to dismiss Plaintiff's conversion and trespass to chattels claims.

### F. Fraud Claim

The parties dispute whether Plaintiff's allegations of fraud satisfy Fed. R. Civ. P. 9(b).  Rule 9(b) imposes a heightened pleading requirement that Plaintiff allege the circumstances constituting the accused fraud "specific[ally] enough to give defendants

11

3:25-cv-03259-H-BJW

notice of the particular misconduct . . . so that they can defend against the charge and not just deny they have done anything wrong." Vess, 317 F.3d at 1106 (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)). Allegations of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. Id. (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, a complaint must "set forth an explanation as to why the statement or omission complained of was false and misleading." Mostowfi v. i2 Telecom Intern., Inc., 269 Fed.Appx. 621, 623–24 (9th Cir. 2008) (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds)).

Plaintiff's complaint does not adequately plead fraud under Rule 9(b)'s heightened pleading standard. A Plaintiff must allege that "the defendant [] intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." Conrad v. Bank of America, 45 Cal.App.4th 133, 157 (1996). Plaintiff has not alleged with sufficient particularity that the Defendants knew their statements were false when they made them or that Defendants intended to induce Plaintiff to act to its detriment in reliance on the false representation. Because Plaintiff fails to plead its fraud claim with particularity, the Court grants Defendants' motion to dismiss the fraud claim with leave to amend.

### G. Unjust Enrichment Claim

The parties dispute whether Plaintiff can bring an unjust enrichment claim given that California law does not recognize stand-alone actions for unjust enrichment and that Plaintiff's unjust enrichment claim is inconsistent with its breach of contract claim. (Doc. No. 3; Doc. No. 4.) The parties are correct that California law does not recognize a stand-alone action for unjust enrichment. Durell v. Sharp Healthcare, 183 Cal.App.4th 1350 (2010); Jogani v. Superior Court, 165 Cal.App.4th 901 (2008). However, Plaintiff can still bring a quasi-contract claim to recoup a benefit unjustly conferred "through mistake, fraud, coercion, or request." Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir.

3:25-cv-03259-H-BJW

2015) (quoting 55 Cal. Jur. 3d Restitution § 2).  A court may therefore view a claim of unjust enrichment as "a quasi-contract claim seeking restitution."  Id. (citing Rutheford Holdings, LLC v. Plaza Del Rey, 223 Cal.App.4th 221, 230–31 (2014)); see Munoz v. MacMillan, 195 Cal.App.4th 648, 661 (2011).

The Ninth Circuit also made clear in Astiana that a quasi-contract action cannot be dismissed on the grounds that it is "duplicative of or superfluous to [Plaintiff's] other claims."  Id. (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")).  Defendants' argument that Plaintiff is barred from asserting a quasi-contract claim because Plaintiff elsewhere pled the existence and enforceability of an express contract is therefore unavailing.  As a result, the Court denies Defendants' motion to dismiss Plaintiff's quasi-contract claim.

### H. UCL Claim

The parties also dispute whether Plaintiff adequately pleads claims under California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200. (Doc. No. 3; Doc. No. 4.)  The UCL protects California's citizens by prohibiting any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; Podolsky v. First HealthCare Corp., 50 Cal.App.4th 632, 647 (1996).  Because Section 17200 is written in the disjunctive, each prong provides a separate theory of liability and Plaintiff need only plead enough facts to allege a violation under one prong. Friedman v. AARP, Inc., 855 F.3d 1047, 1051–52 (9th Cir. 2017); Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012).

By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  Boschma v. Home Loan Center, Inc., 198 Cal.App.4th 230, 251–52 (2011) (quoting Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal.App.4th 638, 643–44 (2008)).  The UCL's "unlawful" prong can borrow from "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory

or court-made." Saunders v. Superior Court, 27 Cal.App.4th 832, 838–39 (1994); Shroyer v. New Cingular Wireless Services, Inc., 622 F.3d 1035, 1044 (9th Cir. 2010). However, a lone common law violation such as breach of contract can support a Section 17200 claim only if "the conduct is also unlawful, unfair, or fraudulent." Shroyer, 622 F.3d at 1044 (citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 319 F.Supp.2d 1059, 1074–75 (C.D. Cal. 2003)). "In other words, a common law violation such as breach of contract is insufficient." Shroyer, 622 F.3d at 1044. Because Plaintiff does not allege any violations other than common law claims, Plaintiff fails to state a claim under the unlawful prong of Section 17200.

Plaintiff's complaint adequately alleges a claim under the "unfair" prong of the UCL. Both parties cite to the California Supreme Court's standard in Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 187 (1999). But the Cel-Tech standard for UCL "unfair" claims applies only to cases between direct competitors, not all commercial cases. Smith v. State Farm, 93 Cal.App.4th 700, 720 n.23 (2001) ("The [Cel-Tech] court made such comment, however, in the context of a dispute between competitors. Indeed, the Cel-Tech court concluded by articulating a specific and restrictive definition of 'unfair' that was to be applied whenever a plaintiff claimed to have suffered injury 'from a direct competitor's unfair act or practice . . .'"). The "unfair" prong outside of the Cel-Tech context means "any practice whose harm to the victim outweighs its benefits." Saunders, 27 Cal.App.4th at 839 (quoting Bank of the West v. Superior Court, 2 Cal.4th 1254, 1267 (1992)). More specifically, a business practice is "unfair" if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves. Klein v. Chevron U.S.A., Inc., 202 Cal.App.4th 1342, 1376 (2012) (citing Camacho v. Automobile Club of Southern California, 142 Cal.App.4th 1394, 1403 (2006)). Plaintiff pleads sufficient facts to state an unfairness claim under the UCL. (Doc. No. 1, Compl., ¶ 54.) The elements of the unfair conduct claim implicate questions of fact that are improper for resolution in a motion to dismiss.

### I. Negligence/Bad Faith Claim

The parties dispute whether Plaintiff adequately pleads a negligence claim and whether any negligence claim is barred by the economic loss rule. (Doc. No. 3; Doc. No. 4.) A negligence claim under California law requires that the Plaintiff allege duty, breach, causation, and harm. Coyle v. Historic Mission Inn Corporation, 24 Cal.App.5th 627, 634 (2018) (citing Ortega v. Kmart Corp., 26 Cal.4th 1200, 1205 (2001)). Plaintiff has adequately alleged all four elements. Plaintiff alleges that Defendants owed Plaintiff a duty of care under both the slip agreement and marina regulations set forth in Harbors and Navigation Code §§ 500–21, which Defendants do not directly dispute. (Doc. No. 1, Compl., ¶ 62.) Plaintiff alleges that Defendants breached this duty through its restrictions on chartering, improper eviction, and wrongful liens. (Doc. No. 1, Compl., ¶¶ 11–15; 63.) Plaintiff also alleges that it was harmed by Defendants' actions, with losses exceeding $500,000. (Doc. No. 1, Compl., ¶¶ 17–19; 65.) Plaintiff sufficiently pleads the elements of negligence, and it is not yet apparent from the parties' briefing that Plaintiff's claim is barred by the economic loss rule. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's negligence claim.

### J. Wrongful Eviction Claim

The parties dispute whether Plaintiff adequately pleads wrongful eviction in its complaint. (Doc. No. 7; Doc. No. 9.) "A tenant who is wrongfully evicted by his landlord before the expiration of the lease term may maintain a wrongful eviction action for tort damages and punitive damages, if appropriate." Nativi v. Deutsche Bank National Trust Co., 223 Cal.App.4th 261, 294 (2014) (citing Stoiber v. Honeychuck, 101 Cal.App.3d 903, 926 (1980)). Notwithstanding Defendants' neglecting to argue Plaintiff's wrongful eviction claim in their opening motion, Plaintiff has adequately pled facts supporting its cause of action. Plaintiff alleges the existence of a month-to-month slip agreement. (Doc. No. 1, Compl., ¶ 8.) Plaintiff also alleges improper termination and lockout despite allegedly performing. (Doc. No. 1, Compl., ¶¶ 12–14.) The Court therefore denies Defendants' motion to dismiss Plaintiff's wrongful eviction claim.

### K. Declaratory Relief Claim

The parties dispute whether Plaintiff's claim for declaratory relief is proper.  As both sides acknowledge, the Declaratory Judgment Act instructs federal courts to issue declaratory relief in cases of actual controversy, to operate prospectively rather than purely to redress past disputes.  28 U.S.C. § 2201.  Plaintiff has adequately alleged facts supporting its claim that an ongoing dispute exists.  Plaintiff alleges that the ban on chartering outside Safe Harbor continues.  (Doc. No. 1, Compl., ¶¶ 5–6.)  Plaintiff also alleges that the scope and meaning of the slip agreement is an ongoing dispute such that it is uncertain what its authority over the use of "Bad to the Bone" is.  (Doc. No. 1, Compl., ¶ 67.)  The Court thus denies Defendants' motion to dismiss Plaintiff's request for declaratory relief.

### L. Motion to Strike Punitive Damages and Injunctive Relief

Defendants move to strike Plaintiff's prayers for punitive damages and injunctive relief. (Doc. No. 4.) Defendants challenge the request for punitive damages on the grounds that none of Plaintiff's allegations support that Defendant Davis acted in "a vile, contemptuous, reprehensible or otherwise despicable manner that would support a finding of punitive damages." (Doc. No. 4.)  Defendants move to strike Plaintiff's prayer for injunctive relief on the grounds that injunctive relief is too extraordinary a remedy. (Doc. No. 4.)  In responding to both requests to strike, Plaintiff asserts that Defendants' arguments go to the merits of each issue which are improperly considered in a motion to strike. (Doc. No. 8.)

Motions to strike are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."  Kohler v. Island Restaurants, LP, 280 F.R.D. 560, 563–64 (S.D. Cal. 2012). Defendants move to strike Plaintiff's prayers for punitive damages and injunctive relief, yet assert arguments going to the substantive merits of each.  Some of Plaintiff's causes of action, if proven, could support granting punitive damages.  There is also no motion for a preliminary injunction pending before the Court, rendering Defendants' arguments on that

3:25-cv-03259-H-BJW

issue premature.  Accordingly, the Court denies Defendants' motion to strike without prejudice.

### Conclusion

For the foregoing reasons, the Court **DENIES IN PART** Defendants' motion to dismiss and **DENIES** Defendants' motion to strike.  The Court grants Plaintiff 30 days to amend its complaint if it can do so.

**IT IS SO ORDERED.**

DATED: February 23, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

3:25-cv-03259-H-BJW